ANNA E. MCALLISTER, APPELLANT, v. J. E. PATTERSON, RESPONDENT.*

Kansas City Court of Appeals. · March 4, 1929.

456

*Corpus Juris-Cyc References: Husband and Wife, 30CJ, section 510, p. 843, n. 11; section 801, p. 1036, n. 50.

*German, Hull & German* for appellant.

*Harding, Murphy & Tucker* and *Sewall D. Collins* for respondent.

LEE, C.—This is an appeal from a judgment for defendant in an action for the value of furniture delivered to defendant for refinishing and repairing, and which it is alleged defendant failed and refused to return on demand. Plaintiff first obtained judgment in a justice of the peace court, from which defendant appealed to the circuit court of Jackson county, where a trial jury rendered judgment in his favor, and plaintiff appeals.

The record shows that in the latter part of May, 1923, while living at 3404 Wyandotte street, in Kansas City, Missouri, plaintiff arranged to have the furniture in question delivered to defendant (who was engaged in the upholstering business), for refinishing and repairs. Defendant called for it at the house and took it to his shop. After two or three weeks' delay, which defendant states was at the direction of plaintiff's husband, the work of refinishing and repairing the furniture was proceeded with and completed. However, the work was not paid for at that time, and defendant retained it in his possession until some months later, when, because he desired the room, and at the direction of Mr. McAllister, plaintiff's husband, who then paid the bill, it was stored with the Lincoln Storage Company (whether in

Mr. McAllister's individual name or in those of himself and wife, jointly, appears uncertain). Sometime in 1924 Mr. McAllister took the furniture from the Lincoln Storage Company and applied it to his own uses.

In November, 1923, Mr. McAllister, plaintiff's husband, moved to Montana, since which time he and plaintiff have been entirely separated. Plaintiff claims that this separation began a considerable time previous to that date, and antedated the delivery of the furniture to defendant.

Sometime in the spring of 1924 plaintiff testifies that she first tendered defendant a draft drawn upon her husband, "because I still felt that it was his obligation to pay for finishing that furniture;" that defendant refused to give up the furniture on the strength of this draft, which was later dishonored. Plaintiff testifies that thereafter (the exact date not being given) she tendered defendant the money for the furniture before he put it in the Lincoln Storage Company. Defendant denies having received any such tender in cash, and denies knowledge of any such tender to his son, who was then in partnership with him.

Plaintiff bases her claim on the allegation that when she married in 1913 her parents gave her a piano, which was later destroyed by fire, and that the insurance money, about $400, was paid to her husband, who used it in his own business under an agreement with her that he should buy her a dining room set. She claims that the furniture now in question was purchased by him under this agreement, and that it was thus her own individual property. It consisted of one china cabinet, five straight chairs, one hostess' chair and one round dining table, costing a total purchase price of $257 plus freight. Being her separate individual property, she claims that her husband had no right to take it, and that the defendant had no right to deliver it to him after they were separated, and that therefore defendant is liable for the conversion. Plaintiff assigns as error the refusal of the court to give the following instruction:

"E"

"The court instructs the jury that if you find and believe from the evidence that at the time the defendant secured the property in question for refinishing that the plaintiff was living separate and apart from her husband that the law presumes the title to be in the plaintiff, Anna E. McAllister and that she was the owner thereof and you are further instructed that this presumption continues throughout the trial in plaintiff's favor and that your verdict will be for the plaintiff unless you find by the greater weight of the credible testimony that plaintiff did not so own said property."

In support of this contention plaintiff cites the case of McKenzie Carpet Co. v. Leffler, 192 Mo. App. 608, 184 S. W. 905, holding that when a husband and wife have separated, though not divorced, the presumption of title in the husband does not obtain and the wife's possession will be presumed to be in her own right. Plaintiff's whole case, on the merits, rests upon this theory, and as a primary premise she seeks to show that she and her husband had separated prior to the time defendant took the furniture. The evidence shows that defendant did not know the McAllisters until he was called in to make an estimate on this particular transaction, and defendant is of course not bound by any antecedent facts bearing upon the actual title to the property, as to which he was not chargeable with knowledge.

Plaintiff was asked whether her husband was living with her at 3404 Wyandotte street at the time defendant Patterson called for the furniture, when the following colloquy was had:

"A. Well, he was coming home occasionally.

"Q. What do you mean by occasionally? A. Well, maybe he would be home for two or three nights straight, and maybe I wouldn't see him any more for two or three.

. . . . . . . . .

"Q. Would you say that he was living with you as your husband at that time? A. No, sir.

"Q. Did he ever come back or has he ever come back and lived with you as your husband? A. No, sir.

"Q. He later went out to Montana didn't he? A. Yes, sir, in the fall of that year."

She further testified as to various domestic infelicities; also, that she personally made the arrangements with defendant for inspecting the furniture and making an estimate on the cost and for the actual contract with defendant for refinishing it, and that her husband knew nothing about it except what she told him. On the other hand, she testified that the estimate was first made while living on Linwood Boulevard, but that the furniture was actually called for by defendant at 3404 Wyandotte street, where "we had moved in the meantime;" that the furniture business which they conducted in their home as a "residence furniture home" was that of herself and husband in partnership, but that she was the only one that took care of it; that the furniture in question was being used by herself and husband, jointly, for domestic purposes; that she had told him "I was going to have it refinished in brown. He knew I was sending it to have it refinished." She further testified that defendant picked up the furniture after "we moved to 34th and Wyandotte;" that her husband paid the rent and household expenses there in May and June; that in June she went to Kentucky, in response to a wire from her husband's father that he was to be operated on, and that she went

and took care of him until August, returning to Kansas City in September.

Defendant states that when he first examined the furniture it was in plaintiff's dining room, and that after he gave the estimate plaintiff told him that "she would consult her husband about it and then let me know;" that after he received the furniture "Mrs. McAllister sent word by our driver at that time not to do anything with the furniture until we heard from Mr. McAllister," and that three or four weeks later Mr. McAllister came in and authorized him to go ahead with the work; that he held the furniture in his store for six months; that Mr. McAllister finally paid for the work from Montana, and that defendant then placed the furniture in the Lincoln Storage at Mr. McAllister's direction. He further testified that Mrs. McAllister at one time "came in and wanted the furniture, but said she did not have the money to pay for it, and we refused to let it go until we was paid." He testified that she then "asked us if we would accept a check on him—would we deliver the furniture to her if it was paid for in that way and we said we would. The check came back with the positive statement from him not to let the furniture go under any circumstances."

Mr. McAllister testified by deposition that he purchased the furniture in question individually, and that he was the sole owner thereof; that it was used in their home and had become worn; that he went to see defendant Patterson and had him go to the home and make the estimate. That he went to Montana in November, 1923, and instructed defendant to place the furniture in storage for him, and that he received it from the storage company in 1924.

Dr. Aubrey testified that he made several calls at 3404 Wyandotte street to treat the children, and once for plaintiff, about October, 1923, for all of which Mr. McAllister paid. Plaintiff testified that this doctor made two calls for the children and that her husband was at home at the time of one of these calls; that the other time "he was down at his business."

Under all the facts as they appear in the record we cannot say that at the time he received the furniture there was anything to indicate to defendant any separate possession or ownership of the furniture, or that the case was different from that of the usual one where husband and wife are using their furniture in common for family purposes. It was brought to him in the ordinary way, with both husband and wife interested in having the work done. He dealt with both of them without any apparent evidence of friction between them until long after the work was completed, when he was holding the furniture for his pay. After being finally paid by one of the parties and storing the furniture to get it out of his way, he

was justified, so far as we can tell by the record, in releasing his lien thereon.

·Even if we assume the correctness of plaintiff's contention as to the actual ownership, there is no evidence making defendant chargeable with notice thereof. The evidence offered, however, as to the actual history of the furniture and its ownership, was flatly contradictory. The issue was fairly submitted under the instructions given, and it was for the jury to determine the facts in the case.

There is in the record no evidence of such exclusive possession by plaintiff, as against her husband, as to raise the presumption justifying the court in giving instruction E as a matter of law, and it was not error to refuse same.

The other errors alleged by plaintiff, namely, that the verdict was against the preponderance and weight of the evidence, and that the court erred in refusing to give plaintiff's peremptory instruction in the nature of a demurrer at the close of all evidence, are. disposed of by what we have said above. Instruction No. 5, as to the credibility of witnesses, was not objectionable.

The judgment of the lower court should therefore be affirmed. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion by Lee, C., is approved and adopted as the opinion of the court. The ·judgment of the trial court is accordingly affirmed. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.

